PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) CASE NO. 1:21-CR-521 ) ) |
| v. | ) JUDGE BENITA Y. PEARSON ) |
| TERRENCE L. JORDAN (1) DAMARA SANDERS (2), | ) ) ) |
| | ) **MEMORANDUM OF OPINION AND** |
| | ) **ORDER** |
| Defendants. | ) Resolving [ECF No. 27] ) |

Pending before the Court's is ECF No. 27, Defendant Jordan's Motion to Suppress, that Defendant Sanders sought to join via ECF No. 28.[1] The Court heard oral arguments on this matter at the Final Pretrial Conference on September 23, 2021.[2] Having heard oral argument, reviewed the written submissions, and applicable law, the Court denies Defendants' motion.

## I. Background

On June 10, 2021, a vehicle driven by Defendant Sanders, with Defendant Jordan as a passenger, was stopped by Ohio State Patrol Trooper Burgett for speeding. Trooper Burgett stopped the vehicle because he observed the vehicle traveling at 89-91 mph. After pulling over the Defendants, Trooper Burgett, approached the vehicle to obtain the license and registration of the driver. During this exchange, Trooper Burgett questioned Defendant Sanders and ascertained

---

[1] Without objection, the Court granted Defendant Sanders' motion to join at the final pretrial conference. *See* Final Pretrial Conference Minutes issued 9/23/2021.

[2] The Court understood Defendant Jordan's motion to request only an oral hearing, given that the transcript of a hearing conducted in state court had been provided. *See* ECF No. 27-1. At the Final Pretrial Conference, Defendants clarified they meant to request an "evidentiary hearing", relying on the provided transcript.

(1:21CR521)

that the vehicle was a rental, that Defendants had driven from Tampa, Florida and were returning home to Erie, Pennsylvania, that the Defendants drove both ways, and that Defendants had driven straight through after leaving Florida at 6:00 p.m. the day before. After that exchange, Trooper Burgett returned to his vehicle at the 06:13 mark on his cruiser's camera.[3]

      Trooper Burgett approached Defendants' vehicle for the second time at the 08:45 time marker. At this point Trooper Burgett informed the Defendant Sanders that she had provided the wrong rental agreement. The agreement Defendant Sanders had mistakenly provided was an old rental agreement for the same vehicle. While obtaining the correct agreement, from Defendant Sanders, Trooper Burgett again questioned Defendant Sanders about her travel plans. He specifically asked Defendant Sanders where she had rented the car from, and where she was taking it. Defendant Sanders responded she came from Florida and that the car would eventually be returned in Florida. Defendant Sanders' responses to these questions are relevant. Her responses included qualifiers like "probably," pauses, and uses of the filler words, "Uh" and "Um."

      Trooper Burgett then indicated that he was "not tracking" and asked more questions to determine where Defendant Sanders was coming from and when she was returning to Florida to return the vehicle. Defendant Sanders indicated she did not know when she was going back to Florida to return the vehicle, that it would eventually be dropped off, and that she would extend the rental. Trooper Burgett then indicated he did not know how that worked and asked Defendant Sanders if she rented often. She responded in the affirmative. Trooper Burgett then returned to his vehicle, at the 10:44 mark.

      At the 11:05 mark, Trooper Burgett called for a K9 Unit. At the 20:05 mark, Deputy Hall from the K9 Unit arrived. When Deputy Hall arrived, Trooper Burgett gave a contemporaneous

---

[3] Trooper Burgett's cruiser camera footage was provided to the Court by the Government on September 23, 2021. The camera's timer does not have a real time equivalent, but rather counts upwards from the time the stop was initiated. Therefore, when the Court references a time marker such as the "6:13 mark", it is referring to six minutes and thirteen seconds into the stop.

2

(1:21CR521)

explanation as to why he called the K9, indicating that what he heard from Defendant Sanders "doesn't make sense." Trooper Burgett specifically mentioned the speeding, the heavy breathing of passenger, Defendant Jordan, and that the defendants were driving straight through from Florida. During this exchange, Trooper Burgett mentioned that if the K9 did not find anything he was "ready to hit print and get on the way." Deputy Hall then approached the vehicle and informed Defendants of the K9 walk around, and Trooper Burgett informed Defendant Sanders that he would give her the ticket if the K9 did not find anything.

The K9 walked around the vehicle and subsequently alerted. Defendants were removed from the vehicle and searched. At the 40:00 cruiser camera marker, Trooper Burgett cautioned Defendants of their *Miranda* rights, questioned them about a safe that was found in the rear passenger compartment of the vehicle, and asked if Defendants would open it. Defendants declined and requested to speak with their attorney. Trooper Burgett returned and told Defendants that the officers would now keep the safe and open it with a warrant, and asked again if Defendants would unlock it. At the 1:00:01 mark, Trooper Burgett returned and indicated that he would ride with Defendant Sanders to a different location where the safe would be opened by officers. Trooper Burgett and Defendant Sanders rode to that location, and multiple officers made many efforts to open the safe. Eventually, the safe was opened and Defendant Sanders was placed under arrest for felony drug possession at the 2:00:01 mark.

Initially, events related to this case was heard in state court proceedings in which Defendant Sanders was charged with an evidence tampering charge, in relation to the allegation that she hid, in a bodily cavity, a key to the safe found during the stop. At the preliminary hearing for those state court proceedings, Trooper Burgett testified about the traffic stop and the Officer who found the key testified about the circumstances under which the key was found. During Trooper Burgett's testimony, when he was asked why he called the K9, he stated:

> "It was a rental vehicle. Um, she was traveling from Florida to Pennsylvania. She stated they were going directly so not stopping. There were bags thrown around in the

3

(1:21CR521)

> vehicle… While I spoke to her, I actually observed the passenger -- I could see him breathing heavily, while he was seated."

*See* ECF No 27-1 at PageID #: 122.

## II. Analysis

Defendants' motion does not challenge the justification for the initial stop of the vehicle due to the speeding, but rather two other points. First, whether the stop was prolonged by the officer to allow the K9 Unit to arrive. Second, whether there was reasonable suspicion to extend the stop. Also, the Court raised *sua sponte* whether the subsequent search of the safe was justified.

### A. Was the Stop Unreasonably Extended

Defendants' argument that the stop was extended center around Trooper Burgett's statement that he was "ready to print" when the K9 Unit arrived.

Traffic stops of automobiles are "well-established" exceptions to the warrant requirement. *Campbell v. Mack*, 777 F. App'x 122, 131 (6th Cir. 2019). A law enforcement officer may stop and briefly detain a person for investigative person based on articulable facts that criminal activity is afoot. *United States v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020). Authority for the stop ends when tasks attendant to the traffic infraction are or reasonably should have been completed, whichever comes first. *See Hernandez v. Boles*, 949 F.3d 251, 256 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 847 (2020).

Defendants argue that because Trooper Burgett was "ready to print" if the K9 did not alert, all tasks related to the traffic citation had been completed. The Government argues that Trooper Burgett contemporaneously completed the citation when the K9 arrived. The Court will resolve the factual and legal disputes in turn.

First, the parties disagree about whether and how long the stop was extended. This dispute exists, in part, because it is unclear exactly when the citation could have been issued during. To resolve this dispute the Court must infer from the evidence whether and for how long the stop was extended. Arguably, the traffic portion of the stop could not have concluded until

4

(1:21CR521)

Trooper Burgett had the correct rental agreement. Trooper Burgett obtained the correct rental agreement and returned to his vehicle with it at the 10:44 mark. The K9 arrived and Trooper Burgett stated he was ready to print, at the 20:05 mark, not more than ten minutes later. So, if extended, the stop was only extended for around ten minutes, that is from the time Trooper Burgett received the correct rental agreement, and the time that the K9 arrived and alerted.

The legal question that the Court must consider is whether the tasks related to the stop were or reasonably should have been completed before the K9 arrived. *Id*. In this determination, the Court must look to whether the officer was unreasonably prolonging the search in any way. See *United States v. Stepp*, 680 F.3d 651, 662-63 (6th Cir. 2012). In *Stepp*, the Court found that a wait of less than ten minutes was an unreasonable delay triggering a reasonable suspicion analysis, when the officer was asking extra questions to prolong the stop. *Id*.

In this case, the potentially prolonging act occurred when Trooper Burgett withheld the ticket until after the K9 had walked around the car. As Trooper Burgett's representations to Deputy Hall and Defendant Sanders pointed out, he would only give the ticket to give Defendant Sanders after the K9 search was done. Those representations arguably show that the tasks related to the traffic stop could reasonably have been completed before the K9 walked around the vehicle. The Court therefore concludes that the stop was in fact extended.

### B. Reasonable Suspicion to Extend the Stop

Now that the Court has determined that the stop was extended, the next analysis is whether there was reasonable suspicion to extend the stop. *Rodriguez v. United States*, 575 U.S. 348, 357 (2015). Officers may reasonably conclude the forthcoming of criminal activity when they observe conduct raising their reasonable suspicions. *United States v. Farrington*, 795 F. App'x 404, 408 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 2657, (2020). The suspicion must be based on specific and articulable facts which taken together with rational inferences from those facts reasonably warrant the intrusion. See *United States v. Bloodworth*, 798 F. App'x 842, 845-46 (6th Cir. 2019), (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22, (1968)) *cert denied*, 141 S. Ct. 123 (2020). "The standard is an objective one, that determines whether "the facts available to

5

(1:21CR521)

the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate."" *Id*.  Whether an officer has reasonable, articulable suspicion of criminal activity is based on the totality of the circumstances presented to the officer.  *United States v. Jones*, 673 F.3d 497, 502 (6th Cir. 2012).

In this case, the Government posits five factors that Trooper Burgett relied on in forming reasonable suspicion:

> 1. Defendant Jordan's heavy breathing.
> 2. Defendants' possession of an old rental agreement for same vehicle,
> 3. The short turnaround of second agreement with no plans on when to return the vehicle.
> 4. Driving straight from Florida throughout the night when there were two possible drivers.
> 5. Driving in opposite direction of where the car was due to be returned the next day.

*See* ECF No. 31 at PageID #: 154-55.

Defendants object to these factors on factual and legal grounds, that will be addressed in turn.  There are two factual disputes related to what factors Trooper Burgett actually relied on compared to what factors the Government claims he relied on in forming reasonable suspicion.

First, Defendants argue that the best indication of the factors considered by Trooper Burgett are those explicitly referenced by Trooper Burgett at the preliminary hearing for Defendant Sanders' evidence tampering charge.  *See* ECF No 27-1 at PageID #: 122.

The Government retorts that the procedural posture of that hearing did not require Trooper Burgett to give his full explanation.  The question before that court, during the preliminary hearing, was whether there was sufficient cause to sustain a state tampering with evidence charge related to the allegation that Defendant Sanders hid the safe key.  *Id*. at PageID #: 139.  There is no indication from that record that Trooper Burgett gave his full accounting of his reasonable suspicion at that hearing.  Also, although Trooper Burgett did not mention the

6

(1:21CR521)

factors of the rental agreement, and that Defendants were driving in the opposite direction of where the rental was due, it is apparent from his questioning of Defendant Sanders on the cruiser camera footage, that the rental agreement and travel plans of the Defendants factored into his reasonable suspicion analysis.

Second, Defendants argue that the claim that there were two possible drivers in the car, is factually is inaccurate because Defendant Jordan was not eligible to drive at the time of the stop. It is not clear from the record what Trooper Burgett knew about Defendant Jordan's driving eligibility.  Considering the factual dispute as to what Trooper Burgett knew about regarding this factor, the Court will not consider the availability of multiple drivers in its analysis.

Defendants make two legal arguments regarding reasonable suspicion.  First, that certain factors relied on in the reasonable suspicion analysis should be disregarded because they are wholly innocent.  Second, that the factors taken together in this case are like another case, in which the Sixth Circuit held there was no reasonable suspicion.

Defendants' first legal argument attempts to eliminate certain factors that Trooper Burgett used to establish reasonable suspicion because they are wholly innocent.  Defendants concede that nervousness of the passenger is a factor that can lead to reasonable suspicion but argue that nervousness alone cannot constitute reasonable suspicion, and that the other factors mentioned are wholly innocent and should not be considered.  Defendants point to *Smith* for the proposition that wholly innocent factors should be excluded from the totality of the circumstances analysis.  United States v. Smith, 263 F.3d 571, 593-94 (6th Cir. 2001).  Yet, a closer analysis of the reasoning in *Smith* considering more recent precedent shows that the proposition that each factor should be considered separately is now disfavored.  The Supreme Court, one year after *Smith*, admonished appellate courts for looking at each basis for reasonable suspicion in isolation of each other.  United States v. Arvizu, 534 U.S. 266, 274 (2002).  Further, the Sixth Circuit has, after *Smith*, noted that under the proper totality-of-the-circumstances approach, "we must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior

(1:21CR521)

when examined separately." *United States v. Winters*, 782 F.3d 289, 301-02 (6th Cir. 2015)(citations omitted).  The Court will not engage in the piecemeal analysis Defendants suggests and will rather look at all the factors as whole as the law requires.

When analyzing the factors, Defendants point again to *Smith*.  The facts in *Smith* diverge from the facts of this case.  In *Smith*, the Court pointed out that the officer did not inquire about the discrepancies in the travel plans of the defendant, finding that there was no reasonable suspicion.  *United States v. Smith*, 263 F.3d 571, 594 (6th Cir. 2001).  In this case, however, the officer did in fact inquire into the travel plans and pointed out discrepancies during his questioning.  Trooper Burgett asked multiple times where the Defendants were coming from and where they were going. Trooper Burgett even stopped and had the Defendants re-tell their travel plans when their explanations were "not tracking" for him.

Moreover, the Government points to another case, that has a closer factual similarity to the case at bar.  In *Garrido-Santana*, the Sixth Circuit held that there was reasonable suspicion when one of the factors was a discrepancy between the rental agreement's origin and the direction of the travelers.  The defendants in that case were headed towards New York the day before the rental agreement required the vehicle to be returned in Houston.  See *United States v. Garrido-Santana*, F.3d 565, 575 (6th Cir. 2004).

In the instant case, it was reasonable for Trooper Burgett to suspect that criminal conduct was afoot.  The stop was initially for a mere traffic infraction, but when Defendant Sanders provided the wrong rental agreement, things shifted.  The incorrect rental agreement was a catalyst for further questioning by Trooper Burgett.  From that further conversation, Trooper Burgett realized that the Defendants' travel plans (renting a car to drive from Florida to Pennsylvania, with no clear plans of when Defendants would return to Florida), "did not track." He specifically asked multiple questions about those plans during his questioning of Defendant Sanders.  It was only after that questioning and analysis of Defendants' responses, including the Defendant Jordan's nervous demeanor, that Trooper Burgett called the K9 Unit.  In the totality of the circumstances, Trooper Burgett had reasonable suspicion to extend the stop.

(1:21CR521)

### C. Authority to Search the Safe

The third issue raised *sua sponte* by the undersigned is whether, after searching the vehicle, there was authority for the officers to subsequently open and search the safe found in the vehicle. The authority to search a vehicle after the stop is extended covers the entire vehicle and containers found within the vehicle. *California v. Acevedo,* 500 U.S. 565, 580 (1991). Police officers with probable cause to search a car may inspect belongings that could conceal the object of the search. *Wyoming v. Houghton,* 426 U.S. 295, 306 (1999). In *United States v. Taylor*, 955 F. Supp. 763, 771 (E.D. Mich. 1997), another district court found that the subsequent opening of a safe found during a traffic stop was justified when there was probable cause to search the vehicle. In this case, the probable cause that a crime was afoot that authorized the reasonable extension of the stop, applies also to the opening of the safe. Ultimately, the officers had authority to open the safe.

### III. Conclusion

For the reasons explained above, Defendants' Motion (ECF No. 27) is denied.

IT IS SO ORDERED.

| October 20, 2021 | /s/ *Benita Y. Pearson* |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |